## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                     )

**JAMES EDWARD RAMSEY,**      )
                                     )

            **Petitioner,**     )
                                     )

      **v.**                   )     **Civil Action No. 12-1818 (RMC)**
                                     )     **(Consolidated with 12-1910)**

**THOMAS FAUST,** *et al.,*      )
                                     )

         **Respondents.**    )
_____ )

## MEMORANDUM OPINION

This matter is before the Court on James Edward Ramsey's petition for a writ of habeas corpus, as amended.[1] For the reasons discussed below, the petition will be denied and this action will be dismissed.

## I.  BACKGROUND

On June 6, 1984, in the Superior Court of the District of Columbia, petitioner was sentenced to a five to 15 year term of imprisonment on his conviction for assault with intent to commit rape, an offense committed on December 23, 1978.  United States' Opp'n to the Pet'r's Pet. for a Writ of Habeas Corpus ("Gov't Opp'n"), at 2; *see id.*, Ex. 1-2 (Judgment and Commitment Order dated June 6, 1984 and excerpt from presentence report, respectively).  At the time of sentencing, petitioner was serving a prison term in Virginia; upon his parole by the Virginia authorities on April 7, 1988, he was returned to the District of Columbia to begin to

---

[1]  Petitioner's motion to amend his petition [ECF No. 16] will be granted.

serve the sentence imposed by the Superior Court.  *See id.*, Ex. 3-4 (Certificate of Discharge,

Virginia Parole Board, dated September 23, 1988 and Face Sheet dated January 14, 1992,

respectively).  The former District of Columbia Board of Parole ("Parole Board") released

petitioner on August 27, 1992.[2]  *Id.*, Ex. 6 (Certificate of Parole dated February 27, 1992).

Petitioner was to remain under supervision until April 11, 2003.  *Id.*, Ex. 6 at 1.

           On December 1, 1997, the Parole Board issued a warrant for petitioner's arrest on

charges of having violated two administrative conditions of his parole release.  *See id.*, Ex. 9

(Warrant No. PE-32627-97 dated December 1, 1997).  Specifically, plaintiff had not kept his

parole officer informed of his address and employment, and he otherwise had not followed his

parole officer's instructions.  *Id.*, Ex. 7 (Report of Alleged Violation(s) dated October 28, 1997)

at 1-2.  For these reasons, he was deemed to have "absconded from Parole Supervision."  *Id.*, Ex.

7 at 3.  At that time, the Parole Board was not aware that petitioner had been convicted and

sentenced in the Circuit Court of Cook County, Illinois, in November 1996, to a 15-year term of

imprisonment for armed robbery and aggravated vehicle hijacking/weapon.  *Id.*, Ex. 10 (Order of

Sentence and Commitment to Illinois Department of Corrections dated November 27, 1996).

Upon receipt of this information, the United States Parole Commission ("USPC"), which by then

had assumed parole authority with respect to District of Columbia Code offenders, *see* D.C.

Code § 22-131(a), directed that the Parole Board's warrant be lodged as a detainer with the

Illinois authorities.  Gov't Opp'n, Ex. 13 (Letter to Blair Leibach, Warden, Danville Correction

Center, Danville, Illinois, from Steve Gagliardi, Case Analyst, USPC, dated December 2, 2002).

In addition, USPC charged petitioner with an additional violation of the conditions of his parole

---

[2]   The Parole Board has since been abolished, *see* D.C. Code § 24-131(b), and the United States
Parole Commission has assumed parole responsibilities with respect to District of Columbia
Code offenders, *see id.* § 24-131(a).

release: a law violation arising from his arrest and conviction in Illinois for armed robbery and aggravated vehicular hijacking with a weapon. *Id.*, Ex. 14 (Supplement dated December 12, 2002). Upon petitioner's release by the Illinois authorities, the Parole Board's warrant was executed on February 21, 2003. *Id.*, Ex. 17 (Warrant return dated February 21, 2003).

USPC conducted a parole revocation hearing on April 21, 2003 at which petitioner was represented by counsel. *Id.*, Ex. 19 (Revocation Hearing Summary dated April 21, 2003) at 1. Petitioner admitted the Illinois convictions and thereby admitted his guilt for the law violations with which he was charged. *Id.*, Ex. 19 at 2. USPC revoked parole. *Id.*, Ex. 20 (Notice of Action dated May 6, 2003) at 1. When petitioner was reparoled on August 26, 2003, he was to remain under supervision until October 2, 2013. *Id.*, Ex. 21 (Certificate of Parole dated August 26, 2003) at 1.

Between 2003 and 2009, USPC issued three letters of reprimand to petitioner, *id.*, Ex. 23, 25 and 29 (Letters of Reprimand dated May 28, 2004, March 10, 2005, and March 20, 2007, respectively), imposed additional conditions of release because of petitioner's continued drug use, *id.*, Ex. 27 (Notice of Action dated March 28, 2006), revoked parole in 2008, *id.*, Ex. 31 (Notice of Action dated August 21, 2008), and reparoled petitioner in 2009, *id.*, Ex. 32 (Certificate of Parole to Detaining Authorities dated July 10, 2009), to a Maryland detainer warrant. In addition, as recommended by the Court Services and Offender Supervision Agency ("CSOSA"), USPC made petitioner "subject to the Special Sex Offender Aftercare Condition," which could require in-patient or out-patient mental health treatment "with special emphasis on long-term sex offender testing and treatment." *Id.*, Ex. 27 at 1; *see id.*, Ex. 26 (Letter to USPC from CSOSA dated February 24, 2006). As of the date of petitioner's release to the custody of

3

the Maryland authorities, he was to remain under USPC supervision until July 12, 2018.  *Id.*, Ex. 32.

Most recently, following a revocation hearing on October 1, 2012, USPC revoked petitioner's parole yet again, directing him to remain in custody until the expiration of his sentence, *id.*, Ex. 34 (Notice of Action dated October 11, 2012), on or about December 26, 2016, *id.*, Ex. 35 (Inmate Locator).

## II.  DISCUSSION[3]

From the Court's review of the original petition [ECF No. 1] and subsequent amendments [ECF Nos. 3, 16 and 21], petitioner presents two issues: (1) whether USPC was authorized to supplement the former Parole Board's December 1, 1997 warrant, to revoke parole in 2003, and to otherwise cause his return to custody; and (2) whether petitioner lawfully can be required to register as a sex offender.[4]

---

[3]  Petitioner appears to challenge the "retroactive application" of USPC's guidelines as a violation of the Ex Post Facto Clause of the United States Constitution.  *See* Am. Pet. at 3.  He claims that issuance by USPC of the supplement to the Parole Board's warrant and application of USPC parole revocation guidelines to his case "created a significant risk of increased punishment, and is thus an unconstitutional ex post facto law."  *Id.*  Petitioner is not entitled to application of any other set of guidelines, such as the regulations promulgated by the Parole Board in 1987, because his offense of conviction occurred in 1978, years before those regulations were in effect.  Given that "under the pre-1987 regime, the [Parole] Board's discretion to grant or deny parole was totally unfettered," *Sellmon v. Reilly*, 561 F. Supp. 2d 46, 50 (D.D.C. 2008), petitioner cannot demonstrate that application of USPC's guidelines "creates a significant risk of a longer period of incarceration than under the earlier rule."  *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 84 (D.D.C. 2008) (internal quotation marks and citation omitted).

[4]  The petition filed in a separate civil action, *Ramsey v. Fulwood*, No. 12-1910 (D.D.C. filed Nov. 27, 2012), is practically identical to the original petition filed in this action.  These cases have been consolidated.

*A. USPC's Authority*

1. USPC's Actions Do Not Violate the Separation of Powers Doctrine

Petitioner contends that USPC exercised judicial functions and that its "decisions violate[] the separation of power[s]" doctrine.  Am. Pet. [ECF No. 3] at 2.  He claims that USPC has subjected him "to a sentence he did not have," particularly because it required that he register for life as a sex offender.  *Id.* at 4.  He is mistaken.

USPC has full authority to grant, deny, and revoke parole, and to impose or modify conditions of parole.  *See* D.C. Code § 24-131(a); *see also Franklin v. District of Columbia*, 163 F. 3d 625, 632 (D.C. Cir. 1998) (acknowledging that the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (1997), transferred to the USPC "the jurisdiction and authority of the Board of Parole of the District of Columbia to grant and deny parole, and to impose conditions upon an order of parole, in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia Code").  The statutes under which USPC operates "govern the execution of a judicially imposed sentence."  *Moore v. U.S. Parole Comm'n*, No. 10-1987, 2011 WL 550003, at *1 (D.D.C. Feb. 10, 2011).  Proceedings pertaining to parole are not part of a criminal prosecution.  *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).  Rather, such proceedings are separate administrative matters "at which the parolee does not possess the same rights as a criminal defendant at trial."  *Maddox v. Elzie,* 238 F.3d 437, 445 (D.C. Cir. 2001).  USPC has no authority to impose a prison sentence upon conviction for a crime under District of Columbia law; this authority rests with the Superior Court of the District of Columbia.  *See* D.C. Code § 11-923(b) (granting jurisdiction to Superior Court over any criminal case under District

of Columbia law).  USPC, therefore, exercises no judicial function, and its decisions do not

violate the separation of powers doctrine.  *Geraghty v. U.S. Parole Comm'n*, 719 F.2d 1199,

1211-12 (3d Cir. 1983); *Artez v. Mulcrone*, 673 F.2d 1169, 1170 (10th Cir. 1982); *Page v. U.S.

Parole Comm'n*, 651 F.2d 1083, 1085 (5th Cir. 1981); *Moore v. U.S. Parole Comm'n*, No. 10-

1987, 2011 WL 550003, at *1 (D.D.C. Feb. 10, 2011); *Montgomery v. U.S. Parole Comm'n*, No.

06-2113, 1007 WL 1232190, at *2 (D.D.C. Apr. 26, 2007).  USPC "does not usurp a judicial

function when, as here, it acts 'pursuant to the parole laws and regulations of the District of

Columbia.'"  *Thompson v. D.C. Dep't of Corr.*, 511 F. Supp. 2d 111, 114 (D.D.C. 2007) (quoting

D.C. Code § 24-131(c)).

    2.  The Parole Board Was Not Obligated to Conduct a Revocation Hearing in 1997

       When the Parole Board issued its warrant on December 1, 1997, petitioner was

serving a prison term in Illinois.  "At no time since the warrant was placed as a detainer . . . did

the [Parole Board] grant petitioner's repeated requests for a parole revocation hearing or a

dispositional interview."  Mot. to Am. Pet. [ECF No. 16] at 3 (page number designated by ECF).

According to petitioner, the Parole Board "was obligated to hold a five-day prompt probable

cause hearing and a revocation hearing within ninety days after [his] request."  *Id.* at 4.  Because

he has been prejudiced by its unreasonable "delay of more than five years without making any

. . . decision," petitioner claims an entitlement "to an order of unconditional release."  *Id.*

       A parolee imprisoned upon conviction of a crime committed while on parole is

"deprived of no constitutionally protected rights simply by issuance of a parole violator warrant,"

and USPC "therefore has no constitutional duty to provide petitioner an adversary parole hearing

until he is taken into custody as a parole violator by execution of the warrant."  *Moody v.*

*Daggett,* 429 U.S. 78, 89 (1976).  The "operative event triggering any loss of liberty attendant upon parole revocation," *id.* at 87, was the execution of the Parole Board's December 1, 1997 warrant, as supplemented by USPC on December 12, 2002.  *See Anderson v. Fulwood*, __ F. Supp. 2d __, 2013 WL 204669, at *4 (D.D.C. Jan. 18, 2013); *Munn Bey v. U.S. Parole Comm'n*, 824 F. Supp. 2d 144, 146 (D.D.C. 2011).  As petitioner already knows, "neither the Parole Board nor the [USPC] had an obligation to execute the parole violator warrant or the supplement, or to conduct a hearing, until the expiration of the Illinois sentence."  *Ramsey v. Reilly*, 613 F. Supp. 2d 6, 11 (D.D.C. 2009).

### 3.   Petitioner Remained Under Parole Supervision on December 12, 2002

Petitioner claims that he is entitled to good time and educational credit that has not been applied properly.  *See* Am. Pet. at 2.  He states that "[t]he only good time credits . . . subtracted . . . is 1800 . . . statutory good days," *id.*, and that he also is entitled to an additional "693 days that [were] not subtracted from his indeterminate sentence."  *Id.* (emphasis removed); *see* Pet., Ex. 1 (Face Sheet dated January 14, 1992).  Petitioner appears to argue that, had good time credit and education credit been calculated and applied correctly, the original sentence imposed by the Superior Court on June 6, 1984 would have expired before USPC issued its supplement to the Parole Board's warrant on December 12, 2002, thus depriving USPC of authority to issue a warrant and effect his return to custody in 2003.  Am. Pet. at 2-3.

The parties do not dispute that petitioner is entitled to jail credit of 12 days covering the period between his parole release by the Virginia authorities and his return to the District of Columbia to begin service of the Superior Court sentence  *See* Pet., Ex. (Face Sheet dated January 14, 1992); Gov't Opp'n, Ex. 4 (same).  Petitioner's assertions notwithstanding, the

application of good time credit neither advances his full-term date nor otherwise hastens the expiration of his maximum sentence.  Rather, "[g]ood time credits operate to allow a prisoner to become eligible for release earlier than otherwise authorized by the sentence he received, to advance an inmate's eligibility date for release on parole and to decrease an inmate's mandatory release date."  *Lorando v. Waldren*, 629 F. Supp. 2d 60, 61 (D.D.C. 2009) (citing D.C. Code § 24-201.29 (repealed Aug. 20, 1994)); *Lyons v. CCA/Corr. Treatment Facility*, No. 06-2008, 2007 WL 2007501, at *2 (D.D.C. July 10, 2007) ("[G]ood time credits do not reduce a prisoner's full-term sentence date, and are forfeited upon revocation of parole."); *Winters v. Ridley*, 596 A.2d 569, 573 (D.C. 1991) ("The District of Columbia Good Time Credits Act of 1986 (GTCA) . . . became effective on April 11, 1987," and it "allow[ed] good time credit to reduce a defendant's *minimum* sentence." (emphasis in original)).  When a prisoner's parole is revoked, he "serve[s] the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him *after his return to custody*," and "[f]or the purpose of computing commutation for good conduct, the remainder of the sentence originally imposed shall be considered as a new sentence."  D.C. Code § 24-406(a) (emphasis added).  Upon an offender's subsequent release on parole, he "remain[s] in the legal custody and under the control of the Attorney General of the United States or his . . . representative until . . . [t]he expiration of the maximum of the term . . .  specified in his . . . sentence *without regard to good time allowance*." D.C. Code § 24-404(a) (emphasis added).

        In summary, petitioner was not entitled to any credit for time spent serving criminal sentences in other jurisdictions or for any time spent in the community prior to revocation of parole.  Any good time credit petitioner earned while in custody operated only to advance his parole eligibility date or mandatory parole release date.  Petitioner has not

demonstrated an entitlement to good time or educational credit in such a quantity that his
sentence would have expired before December 1, 1997, the date on which the Parole Board
issued its warrant, or before December 12, 2002, the date on which USPC supplemented the
warrant. *See* 28 C.F.R. § 2.98(a)(2), (g); 28 D.C.M.R. § 217.2 (1987) (authorizing Parole Board
to issue a parole violation warrant "any time up to until the maximum term of the parolee's
sentence"). Among the available sanctions for a parolee's violation of conditions of his release
is the return to custody, *see* 28 C.F.R. § 2.20, as USPC has ordered in this case. *See, e.g., Brown
v. U.S. Parole Comm'n*, 713 F. Supp. 2d 11, 13-14 (D.D.C. 2010).

### B. Sex Offender Registration

According to petitioner, USPC was not authorized to require him to register as a
sex offender because such registration was not a part of the sentence imposed by the Superior
Court. *See* Am. Pet. at 4. This claim is meritless.

The Sex Offender Registration Act ("SORA"), *see* D.C. Code §§ 22-4001 to 22-
4017, "requires District residents convicted of certain crimes to register as sex offenders with the
Court Services and Offender Supervision Agency (CSOSA), a federal agency that also
administers the District's parole and probation programs." *Anderson v. Holder*, 647 F.3d 1165,
1168 (D.C. Cir. 2011). A sex offender who lives, resides or works in the District of Columbia
and who "[c]ommitted a registration offense at any time and is in custody or under supervision
on or after July 11, 2000" is required to register, D.C. Code § 22-4008(9)(B), and the registration
period continues throughout the offender's lifetime, *id.* § 22-4002(b)(1), if he was convicted of a
"lifetime registration offense," *id.* § 22-4001(6), which in petitioner's case is assault with intent
to commit rape. *Id.* § 22-4001(6)(D). SORA delegated to CSOSA "the authority to adopt and

implement procedures and requirements for the registration of sex offenders." *Id.* § 22-4007(a).

SORA is a civil and nonpunitive regulatory scheme and is consistent with federal law. *See*

*Anderson*, 647 F.3d at 1169; *In re W.M.*, 851 A.2d 431, 435 (D.C. 2003) (holding that SORA "is

not punitive" and that its application "to persons who committed sex offenses before it was

enacted . . . does not . . . offend the Ex Post Facto, Double Jeopardy or Due Process Clauses" of

the United States Constitution), *cert. denied*, 543 U.S. 1062 (2005).

USPC is authorized to impose conditions of release, both general conditions and

special conditions. *See generally* 28 C.F.R. §§ 2.85, 2.204. Among the general conditions of

release is that the parolee "comply with any applicable sex-offender reporting and registration

law." *Id.* § 2.204(a)(6)(iv); *see id.* § 2.85(a)(1) (stating that "[t]he conditions set forth in §

2.204(a)(3)-(6) apply" to parolees). Here, because petitioner had been convicted of a lifetime

registration offense and because he found himself in custody on or after July 11, 2000, he

became subject to SORA's registration requirement. CSOSA and USPC acted within the scope

of their authority by requiring registration and sex offender treatment.

## III. CONCLUSION

A "writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in

custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. §

2241(c)(3). Petitioner has not demonstrated that his custody is unlawful. Accordingly, the Court

will deny the petition for a writ of habeas corpus and dismiss this action. An Order is issued

separately.

_____/s/_____

ROSEMARY M. COLLYER
United States District Judge

DATE:  May 6, 2013